## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| DWAYNE TOBAL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VIRGIN ISLANDS POLICE )<br>DEPARTMENT, VIRGIN ISLANDS )<br>DEPARTMENT OF JUSTICE, )<br>NOVELLE E. FRANCIS, JR., )<br>OAKLAND BENTA, NIZAR A. )<br>DEWOOD, CORNELIUS D. EVANS, )<br>MELISSA P. MORONEY, KIRK )<br>FIEULLETEAU, and JOSE SILVA, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 2010-0062 |

**Attorneys:**
**Mark W. Eckard, Esq.,**
St. Croix, U.S.V.I.
        *For Plaintiff*

**Denise N. George, Esq.,**
St. Thomas, U.S.V.I.
**Erika Marie Scott, Esq.,**
St. Croix, U.S.V.I.
        *For Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER is before the Court on Defendants' "Motion for Judgment on the Pleadings" and Memorandum in Support thereof (Dkt. Nos. 47, 48). Plaintiff Dwayne Tobal ("Plaintiff" or "Tobal") challenges his July 16, 2008 arrest and detention in connection with a robbery of a local bank. Following his arrest, a Superior Court Judge ordered Plaintiff detained

without bail. He spent the next seven months in jail until the Virgin Islands Attorney General's Office moved to dismiss the case without prejudice because the Office was not prepared for the approaching trial. The motion was granted, and Plaintiff was released from custody in February 2009.

On July 15, 2010, Plaintiff filed this case against the Defendants pursuant to 42 U.S.C. § 1983 and § 1985 and the Fifth and Fourteenth Amendments to the U.S. Constitution. In summary, Plaintiff alleges that Defendants (1) unlawfully arrested him without first properly investigating his alibi; (2) provided false information to the Superior Court which issued the arrest warrant; (3) conspired to intimidate witnesses from testifying at his detention hearing; (4) failed to conduct a proper post-arrest investigation; and (5) failed to timely turn over material and exculpatory evidence thereby causing him to remain in jail for seven months. Defendants seek Judgment on Plaintiff's Complaint asserting that they were not properly served; Plaintiff fails to state any cognizable claims against them; and they are immune from suit.

For the reasons that follow, Defendants' Motion for Judgment on the Pleadings will be granted in part and denied in part. Specifically, all of Plaintiff's claims under 42 U.S.C. § 1983, except Plaintiff's conspiracy claims, will be dismissed with prejudice for failure to state a claim and/or on grounds of qualified or absolute immunity. Plaintiff's Equal Protection and conspiracy to intimidate witness claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(2)—which are insufficient to state a claim as currently pleaded—will be dismissed without prejudice. Plaintiff shall have sixty days from the date of this Memorandum Opinion—up to and including March 14, 2022—within which to file and properly serve an amended complaint to address the deficiencies identified in the specific claims that have been dismissed without prejudice.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff's Arrest and Detention

Plaintiff alleges that on July 16, 2008, between approximately 11:47 a.m. and 11:54 a.m., the Bank of St. Croix, Peter's Rest branch, was robbed at gunpoint. (Dkt. No. 1 at ¶ 8).[1] The robber wore all black clothing, including a black mask and a "S.W.A.T." vest. *Id*. at ¶ 9. During the robbery, the robber fired a gunshot into the ceiling of the bank. *Id*. at ¶ 10. Surveillance footage from the bank's security camera showed a vehicle circling the bank's parking lot during the robbery. *Id*. at ¶ 13. After seizing money from the bank and property from its customers, the robber took car keys from one of the customers and fled in the customer's car. *Id*. at ¶ 14.

Minutes after the robbery, police arrived at the bank and began interviewing witnesses. *Id*. at ¶ 15. At 12:08 p.m., the bank's Customer Service Representative ("CSR") was interviewed by one officer, but she did not report that she recognized the robber. *Id*. At 12:15 p.m., Detective Kirk Fieulleteau ("Defendant Fieulleteau"), with the Virgin Islands Police Department ("VIPD"), arrived. *Id*. at ¶ 16. He also interviewed the CSR and his report reflected that the CSR stated that the suspect fit the description of a male customer, Dwayne Tobal. She also stated that the robber's voice sounded like that of Tobal. *Id*.

Defendant Fieulleteau also interviewed a bank teller, who stated that the robber fit the description of Tobal. *Id*. at ¶ 17. She stated that the robber's voice sounded more familiar as the robbery progressed, and was similar to that of a male that came to the bank every week to cash his paycheck from Catalina Pool Services ("Catalina Pool"). *Id*. The statement obtained by detectives reflects that, after the robbery, the CSR had told the teller that the robber looked like

---

[1] The well-pleaded facts as alleged in the Complaint are taken as true solely for purposes of this motion for judgment on the pleadings. *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017).

one of two brothers. In response, the teller suggested the names Shane and Dwayne Tobal, but the CSR did not tell her which one of the brothers the robber resembled. *Id*. The written statement also notes that the teller told police that the two brothers looked like twins. *Id*.

Following the interviews with the teller and the CSR, Defendant Fieulleteau contacted Plaintiff Tobal on his cell phone. Plaintiff agreed to meet with Fieulleteau at Tobal's residence. *Id*. at ¶ 20. After this meeting, Tobal voluntarily traveled to the Rainbow Police Complex to be questioned. *Id*. Plaintiff informed police that he had reported to work that morning at Catalina Pool but was told by the manager that there was no work for him that day. Because his brother had driven him to work, he called his wife to pick him up at the Catalina Pool office. *Id*. at ¶¶ 21-22. Plaintiff told police that he was at the Catalina Pool office with his supervisor until his wife arrived. Tobal also reported that he believed that it was close to 1:00 p.m. when his wife picked him up. *Id*. at ¶ 22. Tobal told the police that he was not involved in the bank robbery, and he consented to having his hands and arms swabbed for gun residue or DNA. *Id*. at ¶ 23. Following Tobal's statement, the police did not attempt to contact Tobal's supervisor to confirm whether he was at work at the time of the robbery. *Id.* at ¶ 24.

On the evening of the robbery, the police sought and obtained an arrest warrant for Plaintiff and a search warrant for his residence. (Dkt. Nos. 1 at ¶ 25; 48-1; 48-2). The affidavit provided to the Superior Court Judge reported the statements of the bank employees and also reported that Detective Jose Silva had visited Catalina Pool and spoke to an employee who reported that Tobal had left the business at about 11:00 a.m. and was dressed in a black t-shirt, black pants, black boots, and a black hair stocking. (Dkt. No. 48-3 at 3). The VIPD executed the search warrant on Plaintiff's residence that same evening and arrested Plaintiff. *Id*. The search of Plaintiff's home did not lead to the seizure of any evidence that linked Plaintiff to the bank

robbery. (Dkt. No. 1 at ¶ 26). Based on the statements of the two bank employees and Plaintiff's co-worker, prosecutors filed a complaint charging Plaintiff with twenty-four counts in connection with the bank robbery. *Id*. at ¶ 29.

Plaintiff alleges that once he was arrested, no further investigation was performed. *Id*. at ¶ 30. He asserts that the police never:  performed gunshot residue tests on Plaintiff; conducted a photo line-up or a voice array for the witnesses to identify him; analyzed the Bank's surveillance video to determine the height and weight of the robber; enhanced the video to obtain a clearer image of the robber; investigated the vehicle circling the bank during the robbery; released the surveillance video to the media to seek public assistance in identifying the robber; conducted ballistics tests on the bullet that was fired in the bank to compare it to bullets recovered from other crimes; or investigated whether any police vests were missing at the time of the robbery. *Id.* at ¶¶ 27-28, 31-36.

The arrest warrant issued by the Superior Court set Plaintiff's bail at $500,000. (Dkt. No. 48-1). The bail amount remained unchanged following his advice of rights hearing conducted the next day. (Dkt. Nos. 1 at ¶¶ 38-39; 48-4). Plaintiff and his family lacked the assets to post bail. (Dkt. No. 1 at ¶ 39). In addition, Plaintiff's name and photograph were distributed throughout the media and the story of the robbery and his arrest made front page news in the Virgin Islands. *Id.* at ¶ 40.

On the day after his arrest, Plaintiff's supervisor at Catalina Pool provided the VIPD with a statement explaining that Plaintiff was with him at the office at the time of the bank robbery until about 12:30 to 12:45 p.m. *Id*. at ¶ 41. On the next day, the general manager of Catalina Pool made a statement to the VIPD that he saw Plaintiff at Catalina Pool on the day of the robbery and saw Tobal leaving a little after 12:30 p.m. *Id*. at ¶ 42. On that same day, one of Plaintiff's co-

workers gave the VIPD a statement that he had arrived at Catalina Pool around 1:00 p.m. on the day of the robbery and was informed that he had just missed Plaintiff. *Id*. at ¶ 43. Five days after the robbery, Plaintiff's wife provided the VIPD with a statement asserting that on the day of the robbery, Plaintiff had called her at about 11:15 a.m. requesting a ride home. She also stated that she picked him up at Catalina Pool between 12:20 and 12:25 p.m. *Id*. at ¶ 44.

Despite these statements providing an alibi, Plaintiff remained incarcerated. *Id*. at ¶ 45. On July 21, 2008, some witnesses called into a local radio show to report that Plaintiff did not commit the robbery. *Id*. at ¶ 46. In response to these public statements, Acting Police Chief Oakland Benta ("Defendant Benta") went on the radio show and stated that the police "firmly believe they have the right suspect in custody." *Id*. at ¶ 47. Defendant Benta also told the public that anyone with information—including anyone claiming Tobal was at work during the robbery—"needs to present themselves to us." *Id*. Defendant Benta also assured the public that the police had left "no stones unturned" in their investigation. *Id*. at ¶ 49. Defendant Benta did not mention during the broadcast that several individuals had already provided statements and affidavits stating that Plaintiff was elsewhere at the time of the robbery. *Id*. at ¶ 48.

Following Defendant Benta's appearance on the radio show, Commissioner Novelle E. Francis, Jr. ("Defendant Francis") released a public statement assuring the community that "the arrest was 'solid' and based on 'sound evidence.'" *Id*. at ¶ 50. Defendant Francis' statement also warned residents that making false statements to police was perjury and was punishable by imprisonment. *Id*. at ¶ 51. After several more days of public discussion, the radio show host was contacted by someone on behalf of the Governor's Office and was told that the broadcast discussions of the arrest should be discontinued. *Id*. at ¶ 52.

On or about July 22, 2008—six days after his arrest—Tobal filed a Motion for Reduction in Bail and Release from Custody ("Motion for Release"). This Motion provided the Superior Court with notarized affidavits from Plaintiff's supervisor, his co-worker, and the general manager of Catalina Pool. Plaintiff asserts that the affidavits corroborated Plaintiff's claim that he was present at Catalina Pool when the bank robbery occurred. *Id*. at ¶ 53.

The next day, a hearing was held in Superior Court on Tobal's Motion for Release. The defense had several individuals present at the courthouse to testify on behalf of Plaintiff. The Government, represented by Assistant Attorney General Nizar DeWood ("Defendant DeWood"), orally moved for pretrial detention of Tobal without bail. *Id*. at ¶ 54.

Before, during and after the first bail hearing, some of the defense witnesses had contact with law enforcement or court Marshals. *Id*. at ¶ 55. While waiting for the hearing to begin, one Marshal approached a defense witness and told him that he would seize the witness' vehicle due to a debt the witness owed. The witness was taken to the courthouse parking lot where he explained to the Marshal that the automobile he was driving belonged to his girlfriend. *Id*. at ¶ 56. At about the same time, another defense witness was taken into custody by a Marshal. This witness was held in custody for several hours until someone came to the courthouse and made a payment on his child support obligation. *Id*. at ¶ 57. After this witness was released, he left the courthouse. Within minutes, he was pulled over by an unmarked police car. The plain-clothes officer gave no reason for stopping the witness, but requested the witness' driver's license and insurance information. The witness was forced to stand in the rain while the officer reviewed his documents. When the witness asked to see the officer's identification, the officer told him he didn't need to worry about that and let him go. *Id*. at ¶ 58. Two nights later, that same witness was again pulled over by an unmarked police car. When the witness asked to see the

identification of the plain-clothes officer, the officer refused. The officer informed the witness that "this isn't done with." The officer returned to his vehicle and left without giving a reason for the stop. *Id*. at ¶ 59.[2]

The bail hearing was continued to July 25, 2008 to consider both Tobal's Motion for Release and the Government's Motion for Pretrial Detention. (Dkt. Nos. 1 at ¶ 60; 48-5). Defendant DeWood argued that the alibi evidence that Plaintiff and others had provided to the police was false and that Plaintiff was a danger to the community because he was an illegal immigrant. Defendant DeWood further argued that the affidavit submitted by Plaintiff's supervisor sought to obstruct justice. *Id*. at ¶ 60.

At that same hearing, Detective Silva ("Defendant Silva") testified that he was the case agent for the bank robbery. *Id*. at ¶ 61. When asked whether the police had any witnesses that would testify that Plaintiff was the bank robber, Defendant Silva stated that he had a witness who could testify that he/she recognized the voice of the robber. *Id*. at ¶ 64. Defendant Silva admitted that he was unaware of any fingerprint evidence that connected Plaintiff to the robbery, that no gun residue test had been performed on Plaintiff, and that he could not connect Plaintiff to the bank robbery through the bank surveillance video or objects seized in his home. *Id*. at ¶¶ 62-63, 65-67. Defendant Silva also confirmed that Plaintiff had told police that he had been at work at the time of the robbery. Silva testified officers did not try to contact the supervisor or general manager of Catalina Pool that day to confirm Plaintiff's alibi because it was after 5:00 p.m. when they finished Tobal's interview. Instead, the VIPD was focused on obtaining arrest and search warrants. *Id*. at ¶¶ 68-69. Defendant Silva also agreed that the arrest affidavit he prepared

---

[2] Tobal's Complaint does not identify any of the witnesses he alleges were harassed by law enforcement. (Dkt. No. 1).

omitted any mention of Plaintiff's statement that he was at work at the time of the robbery. *Id.* at ¶ 70. During the bail hearing, the Court was provided several affidavits and statements from Plaintiff's alibi witnesses. (Dkt. No. 48-5 at 19-21).

Several weeks later, the Superior Court issued a written Order denying Plaintiff's Motion for Release and granting the prosecution's Motion for Pretrial Detention. The Court also ordered that Plaintiff be held without bail until trial. (*Id.* at ¶ 71; Dkt. No. 48-5 at 23). Plaintiff appealed that Order, but he remained incarcerated while the Order was on appeal. (Dkt. No. 1 at ¶ 72).[3]

On August 6, 2008, Plaintiff served the prosecution with a discovery request under Rule 16 of the Federal Rules of Criminal Procedure. (Dkt. No. 1 at ¶ 73).[4] This request sought all material that was exculpatory or favorable to Plaintiff. *Id.* Over three months later, the Government, represented by Assistant Attorney General Cornelius D. Evans ("Defendant Evans") provided materials in response to the discovery request. The materials provided at that time did not include any AT&T telephone records from Plaintiff's cell phone. *Id.*

In mid-January 2009, Plaintiff filed a "Motion for Immediate Disclosure of Favorable Evidence," requesting that the Government turn over any previously undisclosed evidence favorable to Plaintiff and material to his guilt, innocence or sentencing. However, Defendant Evans produced no other materials. *Id.* at ¶ 74. On February 2, 2009, Plaintiff filed a third motion

---

[3] On February 11, 2009—the same day the Superior Court denied the Government's motion to continue the trial and the Government filed its motion to dismiss without prejudice—the Virgin Islands Supreme Court found that the Order detaining Tobal without bail violated the Revised Organic Act which "mandates pretrial bail for all defendants other than those charged with first degree murder where the proof is evident or the presumption great." *Tobal v. People of Virgin Islands*, 51 V.I. 147 (V.I. 2009) (Dkt. No. 48-8).

[4] Under Rule 7 of the Virgin Islands Rules of the Superior Court, the Federal Rules of Criminal Procedure apply to criminal actions in the Superior Court, when the Federal Rules of Criminal Procedure are not inconsistent with the Rules of the Superior Court.

seeking discovery materials, including the "usual matters expected in a thorough and professional crime investigation." The Government provided no materials in response to this request. *Id*. at ¶ 75.

On February 9, 2009, Assistant Attorney General Melissa P. Moroney ("Defendant Moroney") provided a supplemental response to Plaintiff's discovery request which included a 66-page copy of telephone records for Plaintiff's cell phone. The records were provided to the prosecution by AT&T and reflected a "run date" of August 26, 2008. The records revealed that someone was engaged in a phone call on Plaintiff's cell phone for three minutes during the time that the bank robbery was in progress. *Id*. at ¶ 76. The next day, Plaintiff filed a Second Motion to Compel the Government to provide evidence pertaining to the investigation of the phone number called by Plaintiff's phone during the bank robbery. *Id*. at ¶ 77.

Two days later, a pretrial suppression hearing was held. *Id*. at ¶ 78. At the hearing, Defendant Moroney stated that the Government was not prepared for trial, then scheduled for February 17, 2009, because further investigation needed to be completed to determine the identity of a possible witness. *Id*.[5] Upon learning that the telephone records had been in the Government's possession for some time and had been produced to defense counsel only two days before the hearing, the Court denied the Government's request to continue the trial date. This resulted in the Government's immediate motion to dismiss all charges against Plaintiff without prejudice. The Court granted the motion and Plaintiff was released from custody. *Id*.

## B.    Plaintiff's Civil Action

On July 15, 2010, Plaintiff filed his Complaint against Defendants Virgin Islands Police Department ("VIPD"), Virgin Islands Department of Justice ("VIDOJ"), and Francis, Benta,

---

[5] This possible witness allegedly was the person on the other end of the three-minute call from Plaintiff's cell phone that occurred during the robbery. (Dkt. 1, at ¶ 78).

DeWood, Evans, Moroney, Fieulleteau, and Silva (collectively "individual Defendants"), in their official and individual capacities. (Dkt. No. 1). On July 30, 2010, Plaintiff tried to serve Defendants VIDOJ, Evans, and Moroney by leaving a copy of the Complaint and Summons with Roberte Cazaubon at the VIDOJ's Office on St. Croix. (Dkt. Nos. 11, 15-16). On August 5, 2010, Plaintiff attempted to serve the VIPD and Defendant Francis by leaving a copy of the Complaint and Summons with Lilyana Rodriguez at the Mars Hill Police Station in Frederiksted. (Dkt. Nos. 10, 12). On the same day, Plaintiff tried to serve Defendants Benta, Silva, and Fieulleteau by leaving a copy of the Complaint and Summons with Lynn Hunt at the Mars Hill Police Station. (Dkt. Nos. 13-14, 17). On August 25, 2010, Plaintiff personally served former VIDOJ Attorney DeWood with the Summons and Complaint in Paterson, New Jersey. (Dkt. No. 18).

On September 14, 2010, Assistant Attorney General Erika Scott filed an appearance on behalf of all Defendants named in the Complaint. (Dkt. No. 19). On that same day, Defendants filed a Motion for Extension of Time to respond to the Complaint. (Dkt. No. 20). In that Motion, counsel claimed that only one of the Defendants had been properly served, but that the Attorney General's Office wanted to address the Complaint on behalf of all Defendants. *Id*. The Motion for Extension of Time was granted. (Dkt. No. 21).

Before that extension expired, Defendants requested another two-week extension to respond to the Complaint. Defense counsel represented that she had been unable to contact all Defendants, and that other factors had made it difficult to file a timely response to the Complaint. (Dkt. No. 22). In this second Motion for Extension of Time, Defendants again stated that "proper service has not been [e]ffected." *Id*. That Motion was granted, and Defendants were given until October 29, 2010 to respond to the Complaint. (Dkt. No. 23).

Defendants filed their Answer to the Complaint (Dkt. No. 24) and an Amended Answer two weeks later. (Dkt. No. 26). In both the Answer and Amended Answer, Defendants raised insufficiency of process and insufficiency of service of process as affirmative defenses. (Dkt. Nos. 24 at 11; 26 at 11). Shortly thereafter, the Magistrate Judge issued a Scheduling Order and the parties began discovery (Dkt. No. 31).

Thereafter, Defendants filed the instant "Motion for Judgment on the Pleadings" and Memorandum in Support thereof. (Dkt. Nos. 47; 48). Plaintiff filed his Opposition (Dkt. No. 55), and Defendants filed a Reply. (Dkt. Nos. 58; 59). In the Memorandum in Support, Defendants argue that Plaintiff failed to properly serve them in accordance with FED. R. CIV. P. 4. (Dkt. No. 47). Defendants also argue that the Complaint fails to state a claim against them and that they are immune from suit under the doctrines of qualified immunity and absolute immunity. *Id*.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987). Proper service of process is essential to a court attaining personal jurisdiction over the defendant. *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996); *see also Adam Technologies LLC v. Well Shin Technology Co., Ltd.,* No. 18-cv-10513, 2021 WL 141371, at *5 (D.N.J. Jan. 15, 2021) (for personal jurisdiction to exist, the procedural requirements of service of process must be satisfied); *Frazier-Alexis v. Superior Court of Virgin Islands*, No. 1:2016-cv-0081, 2019 WL 1466743, at *4 (D.V.I. Apr. 3, 2019) (proper service is a prerequisite to personal jurisdiction).

Once service is contested in a Rule 12 motion, the plaintiff has the burden of proving that service was properly made on the defendant(s). *Sims v. City of Philadelphia,* 552 F. App'x 175, 177 (3d Cir. 2014) (party responsible for service bears the burden of proving service of process was proper); *Youth with a Mission v. Those Certain Underwriters at Lloyds of London*, No. 1:2019-cv-0046, 2020 WL 6702022, at * 1 (D.V.I. Nov. 13, 2020) (same).

### B.    Judgment on the Pleadings

A motion for judgment on the pleadings based on the assertion that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Jenkins v. SEPTA*, 801 F. App'x 71, 72 (3d Cir. 2020). Under the Supreme Court decisions in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when faced with a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6):

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Freeman v. Gov't of the Virgin Islands*, No. 1:2011-cv-080, 2014 WL 4627605, at *2 (D.V.I. Sept. 16, 2014) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)); *see also Thomas v. Rijos*, 780 F. Supp. 2d 376, 379 (D.V.I. 2011) (applying the same standard). In evaluating a Rule 12(c) motion for judgment on the pleadings, the district court must accept all well-pleaded factual allegations in the complaint as true and construe those facts in the light most favorable to plaintiff. *Mierzwa v. Dudek*, 793 F. App'x 105, 107 (3d Cir. 2019).

Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). A

well-pleaded complaint may not be dismissed "even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Fowler*, 578 F.3d at 213 (quoting *Twombly*, 550 U.S. at 556).

When evaluating a motion for judgment on the pleadings, a court may consider the complaint and attached exhibits, as well as matters of public record and "undisputedly authentic documents if the complainant's claims are based upon those documents." *Wolfington v. Reconstructive Orthopaedic Associates II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (footnotes omitted); *see also Valerino v. Holder*, No. 1:2008-cv-035, 2013 WL 6283713, at *5 (D.V.I. Dec. 4, 2013) (Plaintiff's EEOC complaint may be considered with Rule 12(c) motion as a matter of public record).

## III.   DISCUSSION

### A.   Service of Process

In their Motion, all Defendants—except Defendant DeWood in his individual capacity—contend that they are entitled to judgment as a matter of law on Plaintiff's claims because he failed to properly serve the summons and complaint on them. They also claim that Plaintiff should not be given additional time to achieve proper service because he cannot show good cause for his delay, especially after he received early and repeated notice that Defendants were challenging the propriety of service. (Dkt. No. 48 at 7-10).

#### 1.   Service on the VIPD, VIDOJ, and Individual Defendants Named in their Official Capacities

In their Motion, the VIPD, VIDOJ, and the individual Defendants argue that when the Government of the Virgin Islands, its agencies, or employees acting in their official capacities are sued, FED. R. CIV. P. 4(j) requires that the Governor of the Virgin Islands be served with the Complaint. They claim that because the Governor was not served in this case, Plaintiff's claims

14

against the VIPD and VIDOJ, as well as the official capacity claims against the individual Defendants, must be dismissed. They also argue that actual notice cannot cure Plaintiff's insufficient service of process. (Dkt. No. 48 at 7-10).

Plaintiff does not squarely address Defendants' Rule 4(j) argument. Instead, Plaintiff argues that "the Summons and Complaint were accepted by individuals that were in a position such that there was a high probability that the papers would reach either the individual Defendants or the person within the government organization responsible for protecting the organization's interest in the litigation." (Dkt. No. 55 at 4). Plaintiff also asserts that the Defendants had actual notice of the action—as evidenced by their Answers and the filing of the instant Motion—and therefore have suffered no prejudice from Plaintiff's failure to serve the Governor. *Id.* at 3-4. Finally, Plaintiff invokes Rule 4(m) and requests more time to complete service, should the Court find that service was deficient. *Id.* at 4.

Actual notice cannot overcome defective service of process. "Although notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993); *see also Pickering v. Arcos Dorados Puerto Rico, Inc.*, No. 3:2014-cv-092, 2016 WL 1271024, at *4 (D.V.I. Mar. 30, 2016) (actual notice of the lawsuit does not replace proper service). Thus, even if Defendants had actual notice of Plaintiff's Complaint, such notice does not satisfy Plaintiff's obligation to properly serve them.

When the Government of the Virgin Islands, one of its agencies, or a government official is named as a Defendant, courts have repeatedly held that the Governor must be served with process. *See, e.g.*, *Jarvis v. Gov't of Virgin Islands*, No. 1:2007-cv-117, 2009 WL 367727, at *4 (D.V.I. Feb. 12, 2009) (service on the Governor is required in action against Bureau of Internal

Revenue and Virgin Islands Government); *U.S. Dep't of Agric. Rural Hous. Serv. v. Penn*, No. 3:2008-cv-073, 2009 WL 972882, at *2 (D.V.I. Apr. 9, 2009) (finding that service on the Virgin Islands Housing Authority was improper because there was no proof of service on Governor).

FED. R. CIV. P. 4(j)(2) provides:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

There is no dispute that Plaintiff has not complied with Rule 4(j)(2)(A), in that Plaintiff did not serve the Governor of the Virgin Islands. Thus, the question becomes whether Plaintiff made service according to local law as stated in Rule 4(j)(2)(B). The Virgin Islands Code does not have a statute addressing service of process on the Government of the Virgin Islands, a territorial agency, or government employees in their official capacities. However, Virgin Islands Superior Court Rule 27(b) in effect at the relevant time provided that:

> The summons and process shall be served in the same manner as required to be served by Rule 4 of the Federal Rules of Civil Procedure, provided, however . . . that all references to "United States or any officer or agency of the United States" shall be read instead "Virgin Islands or any officer or agency of the Virgin Islands."

Rule 4(i) sets out the means for "Serving the United States and Its Agencies, Corporations, Officers, or Employees." FED. R. CIV. P. 4(i)(2) provides:

> To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

Thus, under Local Rule 27(b), to serve the VIDOJ, VIPD, and the individual Defendants sued in their official capacities, Plaintiff was required to serve the Governor and to send a copy of the summons and complaint by registered or certified mail to the VIDOJ, VIPD, and each of the

16

individual Defendants. *See Oliver v. Virgin Islands Bureau of Internal Revenue, et al.*, No. 1:2016-cv-0031, 2020 WL 3085909, at *3 (D.V.I. June 10, 2020) (action against VIBIR and individual employee in her official capacity required service on the Governor).[6]

Plaintiff, who has the burden to show that service was proper, has not shown that he served any of the Defendants under the applicable Rules. He does not claim to have served the Governor or the Governor's authorized agent. (*See* Dkt. No. 55 at 2-3). Rather, Plaintiff served one individual at the VIDOJ—Cazaubon—and two persons at the Mars Hill Police Station—Rodriguez and Hunt. (Dkt. Nos. 10-14). Plaintiff does not present any evidence that the individuals receiving service were authorized to accept service of process for the Governor or the Defendants in their official capacities. *Gabros v. Shore Medical Ctr.*, 724 F. App'x 119, 122 (3d Cir. 2018) (plaintiff must present evidence that person served was authorized to receive service of process on behalf of the defendant); *see also Kornea v. J.S.D. Management, Inc.*, 336 F. Supp. 3d 505, 509 (E.D. Pa. 2018) (while defendant's secretary can accept defendant's mail, this fact does not establish that the secretary is defendant's agent for accepting service of process). Accordingly, the Court finds that Plaintiff has not established that proper service was effected on the VIDOJ, the VIPD, or the individual Defendants in their official capacities.

### 2.   Service on Defendants Named in their Individual Capacities

Defendants Francis, Benta, Fieulleteau, Silva, Evans, and Moroney also argue that Plaintiff has failed to properly serve them in their individual capacities.[7] Under FED. R. CIV. P. 4(e)(2), service of process on an individual is accomplished by:

---

[6] Rule 27, and many other Superior Court Rules, were repealed on April 7, 2017, by Supreme Court Proclamation No. 2017-0006. Effective March 31, 2017, service of process procedures for suits against the Government, its agencies, and its employees is controlled by V.I. R. CIV. P. 4(i). Rule 4(i) still requires service to be made on the Governor and the Attorney General.

[7] Defendant DeWood was personally served and does not challenge the sufficiency of service of

(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Here, Plaintiff has not personally served these Defendants nor did he serve a copy of the Summons and Complaint with an appropriate person at their residences. Instead, Plaintiff simply tried to serve them at their place of employment by leaving the Summons and Complaint with a co-worker. *But see Blount v. TD Bank, N.A.*, No. 20-18805, 2021 WL 2651760, at *3 (D.N.J. June 28, 2021) (leaving the summons and complaint at an individual defendant's place of business does not satisfy Rule 4(e)). Again, Plaintiff provides no evidence that these individuals are agents "authorized by appointment or by law to receive service of process" on behalf of these Defendants in their individual capacities, as stated in Rule 4(e)(2)(C). Mere acceptance of service by an employee does not establish that the employee was authorized to accept service. *Snyder v. Swanson*, 371 F. App'x 285, 286-87 (3d Cir. 2010) (service on party's attorney who was not authorized to accept service of process failed to effect service on individual defendants); *Laffey v. Plousis*, Civ. No. 05-2796, 2008 WL 305289, at *5 (D.N.J. Feb. 1, 2008) (service improper because plaintiff did not show that U.S. Marshal's Office employee had actual or apparent authority to accept service on behalf of the individual defendants). Accordingly, the Court finds that Plaintiff has failed to properly serve these individual Defendants in their individual capacities.

### 3. Plaintiff's Request for More Time to Serve Under Rule 4(m)

When this action was filed, FED. R. CIV. P. 4(m) provided:

If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the

---

process for claims against him in his individual capacity.

action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[8]

Under that version of Rule 4(m), Plaintiff had until November 12, 2010, to properly serve Defendants.

Courts apply a two-step approach in determining whether to grant an extension under Rule 4(m). *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). First, the district court must determine whether plaintiff has shown good cause for his failure to effect timely service. If good cause is shown, the court must grant the extension. *Id*. (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). If the plaintiff fails to show good cause, the district court has discretion to grant or deny an extension of time to make service. *Id*. (citing *MCI Telecomm. Corp. v. Teleconcepts, Inc*., 71 F.3d 1086, 1098 (3d Cir. 1995)).

Plaintiff argues that he is entitled to an extension of time to complete service because he has shown good cause for his failure to serve Defendants. In this regard, Plaintiff asserts that all Defendants were timely served at their offices; the VIDOJ promptly filed a notice of appearance and extensions of time to respond to the Complaint; and Defendants all received timely notice of the action. (Dkt. No. 55 at 3-4). Alternatively, Plaintiff argues that the Court should extend the time for him to serve Defendants under its discretionary authority. (Dkt. No. 55 at 2-4). Defendants argue that no extension should be granted because Plaintiff has not shown diligence in attempting to serve them and failed to properly serve them despite repeated warnings that service was improper. (Dkt. No. 59 at 5-7).

---

[8] The current version of Rule 4(m) requires service of process to be made within 90 days after the Complaint is filed. The time limit for service was shortened from 120 days to 90 days, effective December 1, 2015. *See Estate of King v. City of Jersey City*, No. 2:15-cv-6868, 2018 WL 3201793, at *2 n.2 (D.N.J. June 29, 2018) (citing 4 Wright & Miller, FED. PRAC. & PROC.: CIVIL § 1051 (4th Ed. 2009)).

"In determining whether good cause exists, a court's 'primary focus is on the plaintiff's reasons for not complying with the time limit in the first place.'" *Boley*, 123 F.3d at 758. To establish good cause, a party seeking more time to complete service must show "some reasonable basis for noncompliance within the time specified in the rules." *Cardona-Colón v. U.S. Citizenship & Immigr. Services Director*, No. 1:2017-cv-0040, 2021 WL 1235126, at *4 (D.V.I. Mar. 31, 2021) (quoting *Teleconcepts*, 71 F.3d at 1097). Counsel's inadvertence and lack of diligence generally are not sufficient to establish good cause to extend time to serve process. *Blazevich v. Star Hotels, Inc.*, No. 3:19-cv-198, 2021 WL 1214688, at *4 (W.D. Pa. Mar. 31, 2021) (citing *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987)).

Here, the closest Plaintiff comes to arguing "good cause" is his statement that he served persons who "were in a position such that there was a high probability that the papers would reach" the Defendant or correct agency personnel. Plaintiff fails to identify any effort made to comply with the various options identified for service under Rule 4. (Dkt. No. 55 at 4). Plaintiff offers no authority or even explanation for why he believes that this "high probability" theory satisfies his obligation to achieve service under Rule 4. *See Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 884-85 (3d Cir. 1987) ("'[G]ood cause under Rule [4(m)] seems to require *at least* as much as would be required to show excusable neglect;" inadvertence or counsel's ignorance of the rules generally is not sufficient) (citations omitted). Further, Plaintiff should have been aware of the possibility that service was improper, having been put on notice in various filings by Defendants—one submitted more than five months before the instant Motion was filed—which questioned the propriety of service of process. (*See* Dkt. Nos. 20, 22, 24-26). Thus, Plaintiff's mistaken and unfounded belief that service upon persons at Defendants' place of work was proper to achieve service does not constitute "good cause" under Rule 4(m).

In the absence of good cause, the Court must consider whether any other factors support extending Plaintiff's time to make service. *Petrucelli*, 46 F.3d at 1307. These factors include whether the statute of limitations has run on Plaintiff's claims so dismissal for improper service is the same as a dismissal with prejudice; whether Defendant has been prejudiced by the delay; and whether Defendant received notice. *Boley*, 123 F.3d at 759. Other factors include whether the plaintiff was informed that service was improper and any other factor the Court deems relevant. *Chiang v. U.S. Small Bus. Admin*., 331 F. App'x. 113, 116 (3d Cir. 2009) (no discretionary extension when U.S. Attorney sent letter to defendant stating that the Government "would not waive any defects" in service). Plaintiff bears the burden to demonstrate why the court should exercise its discretion to extend the time for service of process. *Jumpp v. Jerkins,* Civ. No. 08-6268, 2010 WL 715678, at *7 (D.N.J. March 1, 2010).

While Plaintiff's excuse for failing to serve Defendants properly and promptly is troubling, the Court finds that the balance of factors favors granting an extension. On the one hand, it is undisputed that Plaintiff was informed repeatedly by Defendants—within the 120-day service window—that service on them was improper. Still, he failed to properly serve any Defendant other than DeWood in his individual capacity. Plaintiff did not seek an extension of time to make service within 120 days of filing his Complaint or even after Defendants filed their Answer and Amended Answer raising insufficiency of service. Plaintiff only requested an extension of time in his response to Defendants' Motion for Judgment on the Pleadings.

On the other hand, Defendants received actual notice of Plaintiff's Complaint. They have not claimed or shown that they will be prejudiced by granting Plaintiff a brief extension. Further, not granting a discretionary extension may amount to dismissing many of Plaintiff's claims with prejudice, as a result of the two-year statute of limitations. *See Estate of Melendez v. Gov't of*

21

*V.I.,* No. 1:2009-cv-0009, 2010 WL 2991045, at *2 (D.V.I. July 26, 2010) ("[C]laims brought under  42 U.S.C. § 1983 . . . are subject to a two-year statute of limitation provided for in 5 V.I.C. § 31(5)(A), the Virgin Islands statute of limitations for personal injury claims." (citing *Callwood v. Questel*, 883 F.2d 272, 274 (3d Cir. 1989))).[9]

In view of the foregoing, the Court will allow Plaintiff sixty days from the date of this Memorandum Opinion within which to file and properly serve those Defendants who remain in the action with an Amended Complaint that complies with the conditions imposed in the accompanying Order.[10] Failure to properly serve these Defendants within that period may lead to the dismissal of Plaintiff's remaining claims with prejudice.

### B. Section 1983 Claims Against the VIDOJ, VIPD, and Defendants in their Official Capacities

Plaintiff's Complaint is "brought pursuant to 42 U.S.C. §§ 1983 and 1985, and the Fifth and Fourteenth Amendments" for violation of his "right to equal protection under the law and procedural due process, right to be free from arbitrary and capricious search, seizure and deprivation of liberty." (Dkt. No. 1 at ¶ 90). Plaintiff alleges that Defendants violated his constitutional rights by:

1) "rushing to arrest Mr. Tobal without verifying his alibi and with a total lack of physical evidence connecting him to the bank robbery" (Dkt. No. 1 at ¶ 87);

2) "publicly announcing that the police firmly believe they have the right suspect in custody and pretending not to have obtained statements from the alibi witnesses" and "issuing public statements that the arrest was solid and based on sound evidence and warning the public about imprisonment for perjury after the alibi witnesses had spoken publicly" *id*.;

---

[9] The Court notes that Plaintiff's Complaint was filed only days before the expiration of the 2-year statute of limitations as to his false arrest claims.

[10] As discussed more fully below, the Court will grant Plaintiff leave to amend only certain claims in his Complaint.

3) "harass[ing] . . . the defense witnesses" *id*.;

4) "fail[ing] to pursue [a] competent and professional investigation" *id*. at ¶ 95;

5) "withholding of exculpatory evidence from the Plaintiff" *id*. at ¶ 96;

6) "conspir[ing] to deter Plaintiff's defense witnesses from attending court and testifying by both force and intimidation" *id*. at ¶ 91; and

7) "conspir[ing] to withhold exculpatory evidence from the Plaintiff." *Id*. at ¶ 92.

Each of Plaintiff's claims will be addressed in turn.

A plaintiff seeking relief pursuant to 42 U.S.C. § 1983 must prove "two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Washington v. Hanshaw*, 552 F. App'x 169, 171 (3d Cir. 2014) (discussing Fourth Amendment claim involving unlawful arrest and detention) (citing *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011)). The VIPD, VIDOJ and the individual Defendants named in their official capacities argue that Plaintiff's claims must be dismissed because they are not "persons" under section 1983. (Dkt. No. 48 at 10-12).

As Defendants correctly note, the Government of the Virgin Islands, its agencies, and its employees sued in their official capacities are not "persons" under 42 U.S.C. § 1983. *McCauley v. Univ. of the V.I.,* 618 F.3d 232, 240 (3d Cir. 2010); *see also Ngiraingas v. Sanchez,* 495 U.S. 182, 192 (1990) ("Congress did not intend to include Territories as persons who would be liable under § 1983").

Citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Plaintiff argues that the VIPD and VIDOJ can be held liable under Section 1983 for the conduct of the individual Defendants if the allegedly unlawful conduct resulted from agency custom, policy, or practice. *Id.* at 690-91 ("[L]ocal governments, *like every other § 1983 'person,'*" may be sued for

constitutional deprivations caused by governmental customs and official policies). *Monell* only applies, however, to municipalities and local governments. 436 U.S. at 690, n.54. This argument is misplaced here because, the Virgin Islands Government, its agencies—the VIDOJ and VIPD—and its officers acting in their official capacities are treated like States, not local governments, and thus are not "persons" for purposes of Section 1983. *See, e.g.*, *Wheatley v. Mapp*, No. 3:2015-cv-0040, 2016 WL 1092565, at *5 (D.V.I. Mar. 21, 2016) (A territory is not a person under Section 1983 nor are territorial officers acting in their official capacities except when plaintiff seeks only prospective injunctive relief) (citing *Ngiraingas v. Sanchez*, 495 U.S. at 191-92).[11] Thus, Plaintiff's reliance on *Monell* is unavailing. For these reasons, Plaintiff's Section 1983 claims against the VIDOJ, VIPD, and the individual Defendants named in their official capacities will be dismissed with prejudice.

### C.   Section 1983 and 1985 Claims Against the VIPD Defendants in Their Individual Capacities

While Plaintiff cannot bring a Section 1983 claim against the individual Defendants in their official capacities, he is not prohibited from pursuing monetary claims against them in their individual capacities. *Matta v. Gov't of the Virgin Islands*, No. 1:2001-cv-0091, 2014 WL 4243673, at *5 (D.V.I. Aug. 27, 2014) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)). These Defendants argue, however, that the Complaint fails to state a claim upon which relief can be granted, or alternatively, that they are entitled to qualified immunity.

Plaintiff alleges that Defendants Francis, Benta, Fieulleteau, and Silva ("individual VIPD Defendants") violated his constitutional rights by arresting him without first investigating his

---

[11] Further, the VIDOJ and the VIPD are part of the Executive Branch of the Virgin Islands Government, and thus are not "persons" under Section 1983. *See* 3 V.I.C. § 111; 3 V.I.C. § 251; see also *McCauley v. University of the Virgin Islands*, 618 F.3d 232, 240-41 (3d Cir. 2010).

alibi; omitting material information from the arrest warrant affidavit; failing to conduct a proper investigation after he was arrested; and by issuing public statements which threatened perjury to those who provided information to the police. (Dkt. No. 1 at ¶¶ 24, 27-37, 51, 70). In their Motion for Judgment on the Pleadings, the individual VIPD Defendants argue that they are immune from suit based on qualified immunity.  (Dkt. No. 48 at 24).

The United States Supreme Court has established a two-step process for resolving a government official's qualified immunity claims. First, a court must decide whether the plaintiff has alleged sufficient facts stating a claim for violation of a constitutional right. *Millhouse v. United States*, No. 1:19-cv-00665, 2021 WL 2412930, at *12 (M.D. Pa. June 14, 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  If the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *al-Kidd*, 563 U.S. at 735. Qualified immunity applies unless the official's conduct violated a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "[F]or a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Millhouse*, 2021 WL 2412930, at *12 (citing *al-Kidd*, 563 U.S. at 741). Still, a court has some flexibility in applying the two-step process. A court may—in cases when a court can rather quickly decide that no clearly established law was violated—address the second step without addressing what may be the "more difficult question whether the relevant facts make out a constitutional question at all." *Pearson*, 555 U.S. at 239.

"While courts should resolve questions of qualified immunity at the earliest possible stage of litigation, a Rule 12(b)(6) motion to dismiss will be granted only "when the immunity is established on the face of the complaint.'" *Snatchko v. Peters Twp*., No. 2:12-cv-1179, 2012 WL

6761369, at *9 (W.D. Pa. Dec. 28, 2012) (quoting *Thomas v. Indep. Twp.,* 463 F.3d 285, 291 (3d Cir. 2006)). If the complaint fails to state a violation of clearly established law, a defendant claiming qualified immunity is entitled to dismissal before discovery commences. *Thomas,* 463 F.3d at 291 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). If a court dismisses a claim on qualified immunity grounds, it should be dismissed with prejudice. *See O'Neill v. Kerrigan*, Civ. No. 11-3437, 2013 WL 654409, at *11 (E.D. Pa. Feb. 22, 2013) ("Because Defendants are entitled to qualified immunity as to [plaintiff's] federal claims, those claims . . . will be dismissed with prejudice.").

### 1.  False Arrest: Lack of Probable Cause/Inaccurate Affidavit

Plaintiff alleges that Defendants Silva and Fieulleteau violated his constitutional rights by: (1) "wrongfully detain[ing]" him without first verifying his alibi; and (2) omitting his alibi information from the affidavit used to obtain his arrest warrant. (Dkt. No. 1 at ¶¶ 24-25, 37, 68-70, 87, 112). In response, Defendants argue that there was probable cause to arrest Plaintiff and that Defendant Silva was not obligated to conduct an "exhaustive investigation in order to validate the probable cause" that existed in this case. (Dkt. No. 48 at 17). Defendants also assert that Plaintiff has not alleged that Defendant Silva omitted material information from the arrest warrant affidavit. *Id*. at 18.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (quotation omitted). Probable cause depends on the totality of the circumstances and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"—it "is not a high bar." *Id.* (quoting *District of Columbia v.*

26

*Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586 (2018)). The probable cause standard does not require police officers to prove—after the fact—that they "correctly resolve[d] conflicting evidence or that their determinations of credibility, were . . . accurate." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). Accordingly, a police officer may be liable under § 1983 for an arrest only "if 'no reasonable competent officer' would conclude that probable cause exists." *McKinney v. Prosecutor County Prosecutor's Office*, 612 F. App'x 62, 68 (3d Cir. 2015) (citation omitted).

"If 'at the moment the arrest was made . . . the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law, probable cause is present." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). Once the facts reach the probable cause threshold, an officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle*, 211 F.3d at 790 n.8; *see also Swope v. City of Pittsburgh*, 90 F. Supp. 3d 400, 408 (W.D. Pa. 2015) (quoting *Romero v. Fay*, 45 F.3d 1472, 1477-78 (10th Cir. 1995)) (officer's failure to investigate a suspect's alibi does not 'negate the probable cause for the warrantless arrest in the absence of a showing that the [officer's] initial probable cause determination was itself unreasonable.'"); *see also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (in reviewing § 1983 claim, the district court should have focused on the information the officers had available to them, not on whether the information resulted from exemplary police work). Thus, once the police have probable cause to arrest a suspect, they are not obligated to investigate the suspect's proffered alibi prior to arrest.

Silva's arrest warrant affidavit stated that at 11:59 a.m. on July 16, 2008, the Bank of St. Croix in Peter's Rest was robbed by an individual wearing "a black t-shirt, black pants, black boots or sneakers, a black ski mask, and what appeared to be a black jacket or a bullet proof vest." (Dkt. No. 48-3 at ¶ 17).[12] The affidavit further stated that:

> [Two witnesses] immediately recognized the suspect's voice as that of one Dwayne Tobal. [One of these witnesses] stated that he/she immediately recognized the voice of the person to be that of one Dwayne Tobal. Both [of these witnesses] stated that they recognized his voice since Dwayne Tobal would come almost on a weekly basis to cash his employment check at both branches of the Bank of St. Croix. [One of these witnesses] further recognized the suspect to be Dwayne Tobal due to his physical built [sic], and one of his hair braids protruding from the mask. [Both of the witnesses] were able to describe Dwayne Tobal as a black male, 25 to 30 years old, dark skin, with braided hair. [Both of the witnesses] stated that they last saw Dwayne Tobal as recently as a week prior to July 16th, 2008 . . . . [Both of the witnesses] advised . . . that Mr. Dwayne Tobal is employed by Catalina Pool in Golden Rock, Christiansted, St. Croix. *Upon arrival at Catalina Pool, your affiant was advised by an employee of Catalina Pool that Dwayne Tobal arrived in the morning, and left approximately 11:00 a.m. and was dressed in a black t-shirt, black pants, and black boots, and black hair stockings.*

*Id.* at ¶¶ 14-18 (emphasis added).

The information in the Silva Affidavit was sufficient to provide probable cause for Plaintiff's arrest as a matter of law. *See Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (probable cause may exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary finding.). Two witnesses—who were familiar with Tobal from assisting him weekly—identified the robber as Tobal based on his voice. One of those witnesses further identified Tobal based on the build and hair style of the robber. Finally,

---

[12] As noted above, on a Motion for Judgment on the Pleadings, the Court may consider "any matters incorporated by reference or integral to the claim." *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256 n.1 (3d Cir. 2004); *Acosta v. Hovensa LLC*, No. 1:2008-cv-0089, 2010 WL 695963, at *1 n.1 (D.V.I. Feb. 23, 2010). As Plaintiff challenges whether the Silva Affidavit was enough to establish probable cause, its contents are "integral" to his claim and may be considered by the Court.

about one hour before the robbery, a coworker observed Tobal leaving his workplace dressed in clothing like that which the robber was described as wearing. Together, this information was sufficient to establish probable cause that Tobal was the robber. *Lynn v. Christner*, 184 F. App'x. 180, 184 (3d Cir. 2006) (probable cause existed based on "independent in-person observation that [plaintiff] was the same build and height, and had the same hair and eyes and the same distinctive voice, as the robber."). Many courts have determined that voice recognition and/or identification of the physical attributes of a disguised perpetrator—recognized by persons familiar with the suspect—may be sufficient to support probable cause for an arrest.[13]

Because Defendants had sufficient probable cause to arrest Plaintiff—based on the totality of the circumstances—these Defendant were not constitutionally obligated to further investigate Plaintiff's alibi before arresting him. *Merkle,* 211 F.3d at 790 n.8; *Romero,* 45 F.3d at 1477-78. "In the context of a claim of false arrest and imprisonment by a police officer, the officer is entitled to qualified immunity when 'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Ciardiello v. Sexton*, 390 F. App'x 193, 199 (3d Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. at 228). Based on the facts alleged in the Complaint and the arrest affidavit, these Defendants are therefore entitled to qualified immunity because a reasonable officer could have believed that probable cause existed to arrest Tobal.

---

[13] *See, e.g.*, *Rizzo v. Edison, Inc.*, 172 F. App'x 391, 394 n.2 (2d Cir. 2006) ("voice identification by a witness whose credibility is not in doubt will usually suffice to establish probable cause"); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 255 (1st Cir. 1996) (because four individuals recognized plaintiff's voice as that of the suspect, their evidence was sufficient to find probable cause); *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 166 (E.D.N.Y. 2010) (witness' identification of suspect's voice can establish probable cause absent questions of witness' credibility.); *Beauchamp v. City of Noblesville*, No. IP00-393-C-M/S, 2002 WL 1461751, at *9 (S.D. Ind. May 10, 2002) (statement by rape victim "that she was able to identify the attacker as [plaintiff] because she recognized his mannerisms, his voice, his blue eyes, and what he said to her, notwithstanding the fact that he was wearing a ski mask" sufficient to support probable cause for arrest).

Plaintiff also alleges that his constitutional rights were violated because "the arrest affidavit [Silva] prepared omitted any mention of Mr. Tobal's statement that he was at work at the time of the bank robbery." (Dkt. No. 1 at ¶ 70). In his Opposition, Plaintiff argues that:

> Defendant Silva, as the case agent, knew (1) that the Plaintiff had provided an alibi; (2) that the police had made no effort to confirm the Plaintiff's alibi; and (3) that no witness had provided a positive identification of the Plaintiff as the bank robber. Defendant Silva knowingly and deliberately, or with reckless disregard for the truth, made omissions that created a falsehood in applying for a warrant. These omissions were material and, if not for the omissions, there would have been no finding of probable cause.

(Dkt. No. 55 at 10).

To prevail on this type of claim under Section 1983, Plaintiff must allege: "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quotations omitted). In other words, Plaintiff must allege facts plausibly showing that Defendant Silva "recklessly disregarded the truth in his warrant application, *and* that a warrant application based on what [the officer] should have told the judge would have *lacked* probable cause." *Id.* at 786 (emphasis added). "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Id.* at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Viewed in the light most favorable to Plaintiff, the Complaint alleges that Defendant Silva recklessly omitted from his affidavit Plaintiff's assertion that he was at work at the time of the robbery. (Dkt. No. 1 at ¶¶ 25, 68-70); *see Iqbal*, 556 U.S. at 678. To survive the Motion, however, Plaintiff must also have plausibly alleged that this omitted information was "material"

to the probable cause finding. To determine whether the omission was material, the Court should "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789.

Here, inclusion of Plaintiff's claim that "he was at work at the time of the bank robbery" would not have altered the conclusion that there was probable cause for Plaintiff's arrest. First, "positive identification by a victim witness, without more, [is] usually [] sufficient to establish probable cause." *Id.* at 790. *Two* bank employees stated that they recognized that the voice of the robber was that of Plaintiff and one of them reported that the robber's build and hairstyle matched that of Tobal. This information was sufficient by itself to support probable cause. *Id.* Second, Plaintiff's claim that he was at work at the time of the robbery conflicted with other information in the affidavit—specifically, the statement from a Catalina Pool employee that Plaintiff had left work approximately one hour *before* the robbery wearing clothes similar to that worn by the robber. Because of these facts, the inclusion in the affidavit that Tobal had claimed to have been at work at the time of the robbery would not have undermined a finding of probable cause. *See, e.g.*, *Wilson v. Russo*, 212 F.3d 781, 790-91 (3d Cir. 2000) (variances in eyewitness descriptions set out in arrest warrant were not sufficiently material to undermine probable cause); *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 114 (3d Cir. 2016) (reconstructing the arrest affidavit to insert omitted facts still established probable cause supporting arrest).

Moreover, the Court recognizes that Plaintiff's alibi can be viewed by police as a self-serving claim of innocence that "did not have to be accepted at face value" by police or a neutral magistrate, and thus was not material. *See Porter v. Gray*, Civ. No. 05-231, 2007 WL 464694, at *17 (W.D. Pa. Feb. 13, 2007) (alibi provided by suspect's girlfriend, which was omitted from

affidavit for arrest warrant, was not material to probable cause determination because her bias "would be self-evident to a neutral magistrate"); *see also Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (law enforcement "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.") That Plaintiff's alibi claim was not "material" is further confirmed by the findings of the Superior Court judge who considered Plaintiff's Motion for Bail. After considering the affidavits from several alibi witnesses, the Court found that Plaintiff's alibi evidence did not negate probable cause because they were inconsistent with other testimony and evidence.[14] (Dkt. No. 48-5 at 20). Accordingly, even if Plaintiff's alibi claim was included in Silva's affidavit, the subsequent Court ruling—which considered not only Plaintiff's alibi claim, but also the statements of other alibi witnesses—confirms that the omission would not have undermined the finding of probable cause made by the judge issuing the arrest warrant. *See Wilson*, 212 F.3d at 789.

In view of the foregoing, probable cause existed at the time Plaintiff was arrested for the robbery. Likewise, Silva's failure to report Plaintiff's claimed alibi in the arrest affidavit did not violate Plaintiff's constitutional rights. Accordingly, the individual VIPD Defendants are entitled to qualified immunity for Plaintiff's section 1983 claims for false arrest and the alleged reckless omission of information from the arrest affidavit. As a result, those claims will be dismissed with prejudice.

---

[14] The Court held that "[t]hese discrepancies in witness statements as to Defendant's location and the clothing worn by Defendant at the time of the bank robbery militate against Defendant's alibi and, rather, impute him as the primary suspect that committed the offenses charged in the information." (Dkt. No. 48-5 at 20).

### 2. Failure to Conduct Post-Arrest Investigation

Plaintiff alleges in his Complaint that the individual VIPD Defendants "fail[ed] to pursue [a] competent and professional investigation of the crime," including no post-arrest investigation. (Dkt. No. 1 at ¶¶ 30, 95, 102). According to Plaintiff, the VIPD:

> totally disregarded all of the witnesses that had come forward with statements corroborating Mr. Tobal's alibi and his presence at Catalina Pool Services before, during, and after the occurrence of the bank robbery. Mr. Tobal remained incarcerated at the Golden Grove Detention Facility for a crime he did not and could not have committed.

*Id.* at ¶ 45. Plaintiff further alleges that, when some witnesses called into a local radio station to challenge Plaintiff's arrest, Defendant Benta appeared on the radio show and stated that the VIPD had left "no stones unturned" in their investigation of the robbery. *Id.* at ¶¶ 46, 47, 49. Following the radio show, Defendant Francis released a public statement assuring the community that the arrest was based on "sound evidence" and warning that false statements were punishable as perjury. *Id.* at ¶¶ 50, 51. Plaintiff asserts that these published statements "were part of the overall scheme to conceal the fact that the wrong person had been arrested for a high-profile crime and to keep Plaintiff wrongfully incarcerated for as long as possible." (Dkt. No. 55 at 12).

Plaintiff also lists other investigative actions that Defendants allegedly failed to pursue, such as analyzing the bank video surveillance or conducting ballistics tests on the bullet fired into the bank ceiling. (Dkt. No. 1 at ¶¶ 31-36).[15] In essence, Plaintiff asserts that, following his

---

[15] In his Opposition, Plaintiff also mentions—in passing—the AT&T telephone records that the prosecutor provided to the defense shortly before trial. (Dkt. No. 55 at 11). However, the Complaint alleges only that an Assistant Attorney General possessed the telephone records. (Dkt. No 1 at ¶ 76). Plaintiff does not allege that the VIPD ever had access to those records, let alone that the officers withheld such evidence. Consequently, a failure to investigate claim cannot be asserted against the individual VIPD Defendants based on the prosecutor's late disclosure of the telephone records.

arrest, the VIPD investigators purposefully ignored evidence—the alibi affidavits—which suggested his innocence and, through comments on the radio, inferred that they were not receptive to other theories of the case that might focus on other suspects. Plaintiff alleges that had a thorough investigation been conducted, he would not have been detained for seven months.

In seeking dismissal of this claim, Defendants focus on the assertion that Plaintiff's arrest was supported by "ample probable cause." They assert that since Defendant Silva "possessed probable cause to support the filing of the charges, he had no constitutional obligation to conduct a further investigation for the purpose of discovering exculpatory evidence." (Dkt. No. 48 at 19). Defendants again rely on *Porter*, 2007 WL 464694 to support this proposition.

Defendants' argument misses the mark. Plaintiff's claim challenges Defendants' alleged failure to keep investigating the crime *after* Plaintiff's arrest. Plaintiff asserts that further investigation could have led to some unspecified exculpatory evidence that could have resulted in Plaintiff's earlier release. The "general proposition that a warrantless arrest based upon probable cause does not support a [§] 1983 claim for *false arrest* does not exclude all potential '§ 1983 actions for *wrongful detentions*.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 207 n.12 (2d Cir. 2007) (emphasis added); *Rowe v. Romano*, 940 F. Supp. 798, 803 (E.D. Pa. 1996) (recognizing that a § 1983 claim for improper detention can exist following valid arrest).

Plaintiff's claim of an unlawful prolonged post-arrest detention does not rest on any procedural due process rights. Rather, his Complaint appears to rely on substantive due process rights "derived from [his] liberty interest in fair criminal proceedings."[16] To state a substantive

---

[16] By contrast, Plaintiff's claim relating to his "wrongful" arrest due to lack of probable cause is governed by the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) (the "specific textual source of constitutional protection against unlawful seizures is the Fourth Amendment" and such claims are therefore controlled by that Amendment, not the more generalized concept of substantive due process).

due process claim, a plaintiff must first establish a deprivation of constitutional rights such as that a liberty or property interest has been impaired by the government. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Also, for governmental conduct to violate substantive due process, the Plaintiff must allege more than negligence. Substantive due process is "'intended to secure the individual from the arbitrary exercise of the powers of the government.'" *Daniels v. Williams*, 474 U.S. 327, 330 (1986). Thus, a party pursuing a substantive due process claim must allege an "abuse of official power that 'shocks the conscience.'" *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (citing *Collins v. City of Harker Heights*, 504 U.S. 115 (1992)). Only "the most egregious government conduct" violates substantive due process. *Bailey v. Gibbons*, Civ. No. 09-4119, 2011 WL 4056202, at *13 (D.N.J. Sept. 12, 2011) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *Doe v. Plum Borough School Dist.*, No. 2:17-cv-0032, 2017 WL 3492542, at *9 (W.D. Pa. Aug. 15, 2017) (permitting substantive due process claim when a law enforcement officer fails to investigate in such manner "that shocks the conscience.").

The issue here is whether the facts alleged, viewed in the light most favorable to Plaintiff, show a plausible claim that the individual VIPD Defendants' conduct was so egregious to rise to a constitutional violation. "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999). In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court observed:

> Whether the point of conscience-shocking behavior is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but 'less than intentional conduct, such as recklessness or 'gross negligence,' is a matter for closer calls. To be sure, we have expressly recognized the possibility that some official acts in this range may be actionable under the Fourteenth Amendment[.]

*Id.* at 849. In applying the "shocks the conscience" standard, the Third Circuit has found that this standard applies in egregious circumstances regardless of whether the egregious events are caused by government officials' affirmative acts or whether the constitutional harm is caused by an egregious governmental omission. *Fagan*, 22 F.3d at 1304.[17]

While courts have found that a plaintiff's constitutional rights have been violated based on law enforcement's alleged failure to "adequately investigate" a case after an arrest, those courts have generally required the plaintiff to do more than allege that law enforcement *may* have discovered exculpatory evidence had they followed alternative investigative avenues. *See, e.g., Walz v. Randall*, 2 F.4th 1091, 1104 (8th Cir. 2021) (conscience-shocking recklessness requires more than failing to investigate other leads or explore inconsistencies in evidence); *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (negligent failure to follow alternative investigative avenues does not shock the conscience or deprive defendant of a fair proceeding); *Isaac v. City of New York*, No. 16-cv-4729, 2020 WL 1694300, at *8 (E.D.N.Y. Apr. 6, 2020) (finding allegations—that had detective conducted a more extensive investigation, it would have yielded alternative perpetrators—were conclusory and speculative). Most cases have found constitutional violations only when officers *found* significant exculpatory evidence but concealed it from the prosecutor. *See*, *e.g.*, *Russo v. City of Bridgeport*, 479 F.3d at 205 (officers actively concealed a *clearly* exculpatory videotape of crime and failed to turn it over to the prosecuting attorney, thus hiding the information from detained defendant's counsel); *DeLoach v. Bevers*, 922 F.2d 618, 621 (10th Cir. 1990) (officer's testimony at hearing mischaracterized the evidence

---

[17] Recently, the Third Circuit upheld the denial of qualified immunity to police officers accused of due process violations for allegedly having deliberately deceived the court and parties by concealing favorable evidence and fabricating inculpatory evidence. *Dennis v. City of Philadelphia*, 19 F.4th 279, 288 (3d Cir. 2021). Although the Court did not explicitly reference the "shocks the conscience standard", the decision in *Dennis* was consistent with that standard.

by concealing exculpatory opinion of a key medical expert); *see also Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (officer's deliberate failure to disclose "undeniably credible and patently exculpatory" evidence to the prosecuting attorney exposes him to liability under § 1983). To find such a constitutional violation, courts have required evidence that the investigator "engaged in a conscious effort to suppress exculpatory evidence." *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004); *see also Figueroa v. Kern County*, 2021 WL 826216, *7 (E.D. Cal. Mar. 4, 2021) (Complaint stated a claim based on allegations that officers procured false and unreliable evidence; coerced and intimidated witnesses; hid and distorted evidence; and suppressed exculpatory evidence). The Eighth Circuit—which has addressed this issue more frequently—has expressly limited the "shocks-the-conscience" standard to: (1) attempts to coerce or threaten the defendant; (2) purposefully ignoring evidence of the defendant's innocence; or (3) systematically imposing pressure to implicate the defendant despite contrary evidence. *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009).

While most of these cases have involved summary judgment motions, they nevertheless are instructive in defining the level of misconduct that must be alleged in order to state a plausible substantive due process claim. Accepting as true Plaintiff's allegations that the individual VIPD Defendants failed to pursue the other investigative avenues mentioned by Plaintiff, this does not state a plausible claim of government misconduct that shocks the conscience. Plaintiff does not identify any exculpatory evidence that police withheld from prosecutors. While Plaintiff refers to cell phone records produced belatedly by prosecutors, the Complaint does not allege that these records were obtained by or concealed by any of the individual VIPD Defendants. Nor does the Complaint cite to any evidence that police should have discovered that was clearly exculpatory or sufficiently exonerating that would have

convinced the Superior Court to reduce Plaintiff's bail or otherwise lead to Plaintiff's earlier release.

In contrast to *Russo, Sanders*, and *Clemmons,* the facts here do not allege that the VIPD officers hid the alibi affidavits or any exculpatory evidence from the prosecutor. Instead, the facts set out in the Complaint and the exhibits attached to Defendants' Motion indicate that the alibi affidavits were submitted to the VIPD on July 17, 18 and 21 and provided to the prosecutors.[18]  At the July 25, 2008 hearing on Plaintiff's Motion for Release and the prosecutor's Motion for Pretrial Detention—six days after his arrest—both the Government and Tobal offered arguments, witness statements and affidavits, and live witness testimony regarding Plaintiff's alibi and request for release or reduced bail. (Dkt. Nos. 1, ¶¶ 6-71; 48-5 at 1). Accordingly, the VIPD Defendants did not conceal the alibi evidence or otherwise affirmatively impede the investigation of Plaintiff's alibi.

A First Circuit case is on point. In discussing whether a police officer could treat evidence of innocence with impunity, the Court ruled he may not, explaining:

> One standard police function is to provide information to the prosecutor and the courts. Thus, a police officer sometimes may be liable if he fails to apprise the prosecutor or a judicial officer of known exculpatory information [citing, *inter alia, Sanders*, 950 F.2d at 1162]. In these cases, the constitutional wrong results from the officer's failure to deliver material information to competent authorities. . . . [B]ut the Constitution imposes no parallel duty on a police officer to function as a decisionmaker in order to determine the dissipation *vel non* of probable cause or the actual innocence of a person in custody. In such post-arrest cases, it is ordinarily sufficient for the police officer to bring the relevant information to the attention of the prosecutor or the proper judicial official in a timeous fashion.

---

[18] On a motion for judgment on the pleadings, the Court may consider the Superior Court Judge's Memorandum Opinion because it was attached to Plaintiff's Opposition. *See Car-Freshner Corp.,* 822 F. Supp. 2d. at 172 (providing that court may consider, *inter alia,* documents that, although not incorporated by reference in the complaint, are "integral" to the complaint (and are provided by the parties); or any matter of which the court can take judicial notice for the factual background of the case).

*Brady v. Dill,* 187 F.3d 104, 114-15 (1st Cir. 1999) (citations omitted). The First Circuit in *Dill* observed that it did not mean to suggest that "under no circumstances" could an officer have a duty to determine the innocence of a person in custody. *Id.* at 115. Once lawfully detained on a valid warrant or upon a judicial finding of probable cause, a detainee's claim of innocence—such as by alibi or lack of specific intent—is not normally a police function; "the prosecutor, the judge and the jury are institutionally better equipped to make such determinations." *Diaz v. Bullock*, 268 F. Supp. 3d, 640, 653 (D.N.J. 2017) (citing *Brady*, 187 F.3d at 112). Consequently, it cannot be said that "existing precedent must have placed the . . . constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741).

The Court finds that the VIPD Defendants' behavior, accepting Plaintiff's factual allegations as true, might state a claim for negligence. Those allegations, however, do not rise to the level that shocks the conscience. As a result, Plaintiff has failed to state a claim for a substantive due process violation, and the Court will grant Defendants' Motion for Judgment on the Pleadings as to the individual VIPD Defendants on Plaintiff's failure to investigate claim.

Even if Plaintiff's allegations were sufficient to plausibly state a substantive due process claim, the Court would find, in the alternative, that such a constitutional right was not clearly established at the time of the robbery. Accordingly, the claims against the individual VIPD Defendants must be dismissed on qualified immunity grounds. For a constitutional right to be clearly established, its contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, (1987). To be clearly established, the constitutional standard must be definite enough to put the defendant on notice that, based on the existing circumstances, his or her conduct is prohibited by the Constitution. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). "Thus, to overcome the

assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly established one." *Id.*

The Third Circuit has not opined on whether a constitutional violation exists in the context of a failure by police officers to conduct a thorough post-arrest investigation of a crime after a judicial finding of probable cause.[19] Where the "unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 & n.4 (3d Cir. 2001) (denying qualified immunity despite absence of Third Circuit precedent). Instead, the Third Circuit regularly considers opinions issued by other Courts of Appeals when determining whether a party's rights are "clearly established," even if this Circuit has not yet addressed the right claimed by the plaintiff. *Williams v. Bitner*, 455 F.3d 186, 192-93 (3d Cir. 2006).

The question is whether a reasonable officer could have believed—between July 2008 and February 2009—that he would violate the Constitution if he did not further investigate Plaintiff's alibi or conduct other lines of investigation in light of the information the officers possessed. Plaintiff cites to no cases which show such a standard existed during the relevant time

---

[19] In *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000), the Third Circuit ruled that whether the police officer had a constitutional duty to both inform the prosecutor of a post-arrest exculpatory interview—a friend providing Plaintiff with an alibi—and to get the defendant released was "not entirely settled." *Id*. However, the Third Circuit expressly declined to decide that "difficult issue," because "regardless of the existence and scope of an officer's duty to seek to release a suspect when probable cause no longer exists, or the level of knowledge that he or she must have in order to trigger that duty," the exculpatory interview "clearly did not dispel the earlier probable cause." *Id*.

period. (Dkt. No. 55 at 15-16).[20] As indicated in the analysis of *Russo, Sanders*, and the Eighth Circuit cases, the law that was clearly established at the time of Plaintiff's arrest was that a due process violation would lie if a police officer knowingly possessed and failed to give the prosecutor credible exculpatory evidence. *That* behavior, according to the Courts—which deliberately undermined the fairness of the criminal proceedings and resulted in an innocent person languishing in jail—"shocks the conscience." Based on the facts pleaded in Plaintiff's Complaint, however, Plaintiff cannot show that the individual VIPD Defendants violated clearly established law by their actions or inactions in late 2008 and early 2009.

Based upon the foregoing, Plaintiff has failed to plead sufficient facts that would raise a plausible claim that the VIPD Defendants violated clearly established constitutional standards at the time of Plaintiff's detention. Accordingly, even if Plaintiff's allegations were sufficient to plausibly state a substantive due process claims—which they do not—Defendants would be entitled to qualified immunity.

For all the foregoing reasons, Plaintiff's post-assert investigation claim will be dismissed with prejudice.

### 3. Malicious Prosecution Claim Under Section 1983

Plaintiff alleges that the VIPD Defendants played a role in the Government's alleged malicious prosecution of him by omitting material information from the arrest warrant affidavit,

---

[20] Plaintiff only cites to *Scheuer v. Rhodes*, 416 U.S. 232, 247-48 (1974) and *Wood v. Strickland*, 420 U.S. 308, 322 (1975) which state general legal principles but do not include facts similar to those alleged in this matter. (Dkt. No. 55 at 16). These cases also predate *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) in which the Supreme Court revamped the qualified immunity standard to apply "to government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* specifically rejected the "totality of the circumstances" standards relied upon in *Scheuer* and *Wood*. See *Davis v. Scherer*, 468 U.S. 183, 191 (1984) (noting that *Harlow* rejected the subjective elements for qualified immunity applied in *Scheuer* and *Wood*).

arresting him without confirming his alibi, and thereby unlawfully initiating criminal proceedings against him, and violating his constitutional rights. (Dkt. Nos. 1 at 16, 17; 55 at 10).

The Third Circuit has stated that:

> To bring a malicious prosecution claim, a [party] must establish: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Blair v. City of Pittsburgh*, 711 F. App'x 98, 102 (3d Cir. 2017) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)). In addition, "[t]o obtain qualified immunity in a § 1983 action premised on malicious prosecution, a police officer must show his actions were objectively reasonable under prevailing Fourth Amendment doctrines. Namely, he must show a reasonable officer in his shoes, aware of the same facts and circumstances, would have probable cause to arrest." *Davis v. Malitzki,* 451 F. App'x 228, 232-33 (3d Cir. 2011) (citations omitted).

As discussed above, there was probable cause for Plaintiff's arrest. This fact alone is sufficient to vitiate Plaintiff's malicious prosecution claim.  Because the arrest was supported by probable cause—even when considering Plaintiff's claimed alibi—the Court finds that Plaintiff cannot establish that the individual VIPD Defendants violated his constitutional rights. *See Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (in a successful malicious prosecution claim under § 1983, plaintiff must show that the police officers lacked probable cause to arrest him) (citing *Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005)). In light of Plaintiff's inability to establish the absence of probable cause for his arrest—necessary for both a malicious prosecution claim as well as constitutional violation sufficient to preclude the applicability of qualified immunity—Plaintiff's section 1983 claim for malicious prosecution against the individual VIPD Defendants will be dismissed with prejudice.

### 4. Conspiracy Concerning VIPD's Public Statements

In his Complaint, Plaintiff alleges that VIPD Defendants conspired with each other by making public statements intended to dissuade his alibi witnesses from testifying for him in violation of 42 U.S.C. § 1985. These allegations appear to focus on Defendants Benta and Francis. (Dkt. No. 1 at ¶¶ 48-51, 80-83). After the case was being aired on a local radio station, Defendant Benta discussed Plaintiff's arrest with the station stating that: (1) the VIPD had done a thorough investigation into the robbery; and (2) the VIPD "firmly believe they have the right suspect in custody" and that anyone with information about the incident should contact the VIPD.[21] (Dkt. No. 1 at ¶ 47). Plaintiff also alleges that, after Defendant Benta's radio comments, Defendant Francis released a public statement assuring the community that Tobal's arrest was "solid" and based on "sound evidence" and warning that "making false statements is perjury and is punishable by imprisonment." *Id.* at ¶¶ 50-51.

In their Motion, the individual VIPD Defendants argue that these facts do not support any cognizable claim under 42 U.S.C. § 1985. (Dkt. No. 48 at 20). In turn, Plaintiff argues that the statements made by these Defendants "publicly ridiculed and threatened Plaintiff's alibi witnesses with imprisonment for perjury" and "were misleading and were made for the purpose of silencing and intimidating Plaintiff's witnesses." (Dkt. No. 55 at 12). According to Plaintiff, "[t]hese statements were part of the overall scheme to conceal the fact that the wrong person had been arrested for a high-profile crime and to keep the Plaintiff wrongfully incarcerated for as long as possible." *Id.*

---

[21] Plaintiff further alleges that Benta's statements "ignored the fact that the individuals providing [alibi] information had already provided the police with their statements and had submitted sworn affidavits supporting their statements." (Dkt. No. 1 at ¶ 48).

Section 1985 generally creates a cause of action against both private and state actors "for conspiring to violate federal rights and privileges protected by the Constitution and federal statutes." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 604 (D.N.J. 2002).[22] The second clause of Section 1985(2) makes it unlawful for two or more people to:

> conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice *in any State or Territory*, with intent to deny to any citizen *the equal protection of the laws*, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, *to the equal protection* of the laws.

42 U.S.C. § 1985(2) (emphasis added); *see also Kush v. Rutledge*, 460 U.S. 719, 725 (1983) (the second part of § 1985(2) applies to conspiracies to obstruct justice in states or territories).[23] This portion of § 1985(2) only applies to obstruction of state or territorial proceedings based upon some racial or some other class-based discriminatory animus. *Id.* at 726.

In his response to Defendants' Motion, Plaintiff relies on § 1983 to support his conspiracy claims, rather than § 1985 as asserted in his Complaint. (Dkt. No. 55 at 9). To the extent Plaintiff now claims Defendants' actions constitute a civil conspiracy under § 1983, the VIPD and its agents acting in their official capacities are entitled to dismissal as they are not persons under § 1983. With respect to claims against Defendants Benta and Francis in their individual capacities, Plaintiff must allege that "(1) two or more persons conspired to deprive him of a constitutional right; (2) that one or more of the conspirators performed an overt act in

---

[22] The Complaint does not identify the section(s) of 1985 on which he bases his claims. Based upon his factual allegations, it appears that neither subsection (1)—which deals with conspiracies to threaten persons from holding federal public office or discharging the duties of that federal office—or subsection (3)—which deals with conspiracies to deprive persons of equal protection or privileges and immunities under the law or voter intimidation—has any bearing on his claims.

[23] The first provision of 42 U.S.C. § 1985(2) applies only to witnesses and parties proceeding in federal court and therefore is inapplicable to Plaintiff's claims. *Kush v. Rutledge,* 460 U.S. at 725.

furtherance of the conspiracy; (3) the overt act injured Plaintiff by depriving him of his constitutional right; and (4) the conspirators were acting under color of state law." *Burns v. Schrock*, No. 3:19-cv-00163, 2021 WL 3057104, at *3 (W.D. Pa. May 11, 2021) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

For conspiracies under either § 1983 or § 1985(2), a plaintiff must "set forth facts from which a conspiratorial agreement between the defendants can be inferred." *Shokirjoniy v. City of Clinton Township*, 2021 WL 1207721, at *3 (D.N.J. Mar. 31, 2021) (citing *Parrott v. Abramsen*, 200 F. App'x 163, 165 (3d Cir. 2006) (suit against territorial judges and judicial staff alleging conspiracy to delay and deny plaintiff's habeas petition)). Civil rights conspiracies "require a 'meeting of the minds,'" and plaintiffs must plead a sufficient factual basis to support the existence of the elements of a conspiracy—"namely, agreement and concerted action" to avoid dismissal. *Shokirjoniy*, 2021 WL 1207721 at *3 (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)); *see also Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (2009) (allegations of § 1983 conspiracy must assert agreement and concerted action). In addition, to state a claim under the second portion of § 1985(2), Plaintiff must allege that racial, or other class-based, invidiously discriminatory animus lay behind Defendants' actions. *Kush*, 460 U.S. at 726; *Parrott*, 200 F. App'x at 165.

When assessing allegations of conspiracy, the Court "do[es] not consider any conclusory allegations" of the existence of a conspiracy, including unadorned allegations "that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between the Defendants . . .'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *Iqbal*, 556 U.S. at 681). Conspiracy allegations under § 1985 must be specific. *See Twombly*, 550 U.S. at 565 n. 10 (a complaint was deficient because it did not allege who "supposedly agreed, or

when and where the illicit agreement took place"); *Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (complaint is inadequate to state a § 1985 claim if it merely makes a "conclusory allegation of agreement at some unidentified point"). Further, allegations consisting only of "parallel conduct and a bare assertion of a conspiracy" are not enough for a claim under 42 U.S.C. § 1985(2) to proceed. *Thomas v. The Salvation Army Southern Territory*, 841 F.3d 632, 637 (4th Cir. 2016); *see also Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Tarapchak v. Lackawanna Cty*, 173 F. Supp. 3d 57, 73 (M.D. Pa. 2016) (it is insufficient to establish a § 1985 violation by merely alleging defendants acted "in conscious parallelism").

Plaintiff's conspiracy allegations under Section 1983 and/or 1985(2) relating to Benta's and Francis' public statements are insufficient to avoid dismissal. First, Plaintiff makes no allegations that Benta and Francis or anyone else had an agreement regarding the public statements associated with Plaintiff's arrest or detention such that a conspiracy could be inferred. At best, Plaintiff merely alleges that Benta and Francis were both supervisory officials at the VIPD; they both made public comments (in different fora) about Plaintiff's arrest; and that their comments were made shortly after radio broadcasts on July 21, 2008. (Dkt. No. 1 at ¶¶ 46-50). Even if deemed to be parallel conduct, such conduct "[w]ithout more . . . does not suggest conspiracy." *Twombly*, 550 U.S. at 556-57. Likewise, Plaintiff's allegations are insufficient to infer any purpose to adversely affect Plaintiff's right to "equal protection of the laws." 42 U.S.C. § 1985(2); *West v. SunTrust Mortgage*, Civ. No. 18-3778, 2018 WL 5977984, at *3 (E.D. Pa.

Nov. 14, 2018).[24] Indeed, for purposes of § 1985(2), Plaintiff makes no allegations raising a reasonable inference that Benta's and Francis' comments were due to racial or class-based invidious discrimination. *See Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976).

Accordingly, the Court finds that Plaintiff has failed to state a claim under sections 1983 or 1985(2) against Defendants Benta and Francis for a conspiracy to deprive Plaintiff of equal protection of the laws or to otherwise obstruct his Territorial criminal case. In addition, Plaintiff has not alleged "sufficient factual matter" connected to the other VIPD Defendants which shows a plausible claim that they were involved in any class-based conspiracy to obstruct justice in the Superior Court as a result of these public statements. However, the Court is unable to conclude, as a matter of law, that Plaintiff cannot state a viable claim. Accordingly, the Court will dismiss this claim without prejudice, permitting Plaintiff to replead if he possesses a factual and legal basis to do so. *Iqbal*, 556 U.S. at 677.

### 5.  Conspiracy to Intimidate Witnesses

Plaintiff also alleges that "several actions were taken by law enforcement against some of the defense witnesses to intimidate them and deter them from testifying on Mr. Tobal's behalf." (Dkt. No. 1 at ¶ 55).These actions allegedly included one Marshal's attempt to seize a witness' automobile due to a debt owed by the witness to another party (Dkt. No. 1 at ¶ 56); a second Marshal's actions taking another defense witness into custody until someone made "a payment on a child support obligation" owed by that witness; *id*. at ¶ 57; and two unidentified plain-

---

[24] Both Benta's alleged radio statements and Francis' alleged press statements were broadcast to the general public. The statements were not directed to any particular person, including Plaintiff's alleged alibi witnesses. Plaintiff does not allege that his witnesses were even aware of these statements. Therefore, Plaintiff's minimal factual allegations fail to state a plausible claim under section 1985(2) or provide any inference that Benta and Francis conspired to "imped[e], hinder[ ], obstruct[ ], or defeat[ ], in any manner, the due course of justice" in Plaintiff's territorial case. *Ramos v. Main*, No. 21-1284, 2021 WL 4311427, at *8 (D.N.J. Sept. 22, 2021).

clothes officers stopping a defense witness' vehicle—the day of and the day after the hearing—without giving reasons for the stops, *id*. at ¶¶ 58-59. Plaintiff alleges that "[t]he actions of the Defendants constituted a conspiracy to deter witnesses from testifying in violation of Section 1985 . . . . Two or more of the Defendants conspired to deter Plaintiff's defense witnesses from attending court and testifying by both force and intimidation." *Id*. at ¶¶ 82, 87, 91.

Under section 1985(2), Plaintiff must allege facts plausibly showing that the VIPD Defendants conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice" in the Territorial Courts, with the intent to deny him equal protection of the laws. *Parrott v. Abramsen*, 200 F. App'x at 165. However, Plaintiff does not allege any *facts* that could plausibly infer an agreement between any of the named VIPD Defendants and any of these unnamed officers who actually interacted with his witnesses. Plaintiff's conclusory allegations that the named Defendants conspired with the unnamed law enforcement officers or Marshals to intimidate his alibi witnesses—without any factual details reflecting a meeting of the minds—is insufficient to establish a meeting of the minds for a civil rights conspiracy. Again, Plaintiff also fails to allege any racial or class-based discriminatory animus on Defendants' part. *Id*.[25] *Cf. Miles v. Twp. of Barnegat*, 343 F. App'x 841, 845 (3d Cir.

---

[25] In his Opposition, Plaintiff claims that "[t]he specific facts [supporting the conspiracy allegation] are set forth in detail in Plaintiff's Complaint [at] . . . paragraphs 8 through paragraph 87." (Dkt. No. 55 at 9). The requisite facts are not apparent to the Court from either the Complaint or Plaintiff's Opposition. Moreover, the Court is not required to parse through the complaint to try to ascertain which factual allegations Plaintiff believes support his conspiracy allegations. *See Glover v. F.D.I.C.*, 698 F.3d 139, 147 (3d Cir. 2012) ("Rule 8(a) requires that a complaint be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim.") (citation omitted); *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 560 (D.N.J. 2000) (It is not the Court's duty to sift through Plaintiff's Complaint to determine whether he has "any viable claim under the laundry list of constitutional provisions his counsel has alleged.").

2009) ("[t]he single-sentence conclusory allegations of a conspiracy . . . are insufficient to allege a plausible conspiracy among the defendants to deprive the Plaintiffs of their constitutional rights under § 1983."). Because Plaintiff has not currently pleaded "sufficient factual matter" to plausibly assert a discriminatory-based conspiracy to deprive Plaintiff of justice in the Territorial courts, the Court will dismiss this claim. However, because the Court cannot determine, as a matter of law, that Plaintiff cannot state a viable claim, these § 1985 claims will be dismissed without prejudice, permitting Plaintiff to replead if there is a factual and legal basis to do so. *Iqbal*, 556 U.S. at 677.

### 6. Equal Protection Claims

In each count of the Complaint, Plaintiff alleges that his rights to Equal Protection were violated. (Dkt. No. 1 at 15, 16, 18). The Equal Protection Clause is "'essentially a direction that all persons similarly situated should be treated alike.'" *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quotations omitted). Thus, to state a claim under the Equal Protection Clause, a § 1983 plaintiff "must allege that a state actor intentionally discriminated against him because of his membership in a protected class." *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012). Plaintiff has not alleged he was treated differently than any similarly situated individuals or that he was discriminated against because of his membership in a protected class. Accordingly, his Equal Protection claims against the VIPD Defendants will be dismissed without prejudice. Plaintiff may replead this claim if there is a factual and legal basis to do so.

### D.   Claims Against the VIDOJ Defendants in Their Individual Capacities

Plaintiff alleges that the individual VIDOJ Defendants—DeWood, Evans, and Moroney—violated his constitutional rights by maliciously prosecuting him and by withholding

exculpatory information. (Dkt. No. 1 at ¶¶ 73-79, 86, 100, 103, 115, and 117). These VIDOJ Defendants argue that they are entitled to absolute immunity for the conduct alleged by Plaintiff because their actions occurred while they were performing their official duties as prosecutors. They also contend that there was probable cause for Plaintiff's arrest and thus for his prosecution. They further argue that Plaintiff has failed to plead a *Brady* violation. (Dkt. No. 48 at 21-23).

### 1. Withholding of Exculpatory Evidence

Plaintiff alleges that the individual VIDOJ Defendants violated his constitutional rights and 42 U.S.C. § 1983 by withholding cellular phone records which allegedly prove that he was on his cell phone during the robbery. (Dkt. No. 1 at ¶¶ 73-79).[26] These VIDOJ Defendants argue that they are shielded from this claim by absolute immunity. (Dkt. No. 48 at 21-23).

"More than a mere defense to liability, prosecutorial [absolute] immunity embodies the right not to stand trial . . . and is properly raised in a Rule 12(b)(6) motion to dismiss." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (citations omitted). To qualify for "absolute immunity" to § 1983 liability:

> [A] prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question. This inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. Under this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. Thus, immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.

*Id.* at 208 (internal quotations and citations omitted).

---

[26] More accurately, the information provided shows that the cell phone records reflect that Plaintiff's cell phone was in use by someone for three minutes during the time of the robbery.

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that allegations that the defendant prosecutor used false testimony and suppressed material evidence at Imbler's murder trial were subject to absolute immunity. The Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id*. at 431. Likewise, prosecutors are entitled to absolute immunity even for claims that they intentionally failed to disclose exculpatory evidence, as long as they were carrying out their prosecutorial functions. *Johnson v. Koehler*, 733 F. App'x 583, 585-86 (3d Cir. 2018); *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). Based on the holding in *Imbler*, circuit courts throughout the United States have extended immunity to prosecutors for civil claims based on alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972) when the defendants were acting in their role as prosecutors.[27]

Here, Plaintiff's claim is that the VIDOJ Defendants—prosecutors for the Virgin Islands—withheld exculpatory cell phone records until eight days before the scheduled start of his trial. (Dkt. No. 1 at ¶ 76). Plaintiff is attempting to assert a *Brady* claim—*i.e.*, that the prosecutors allegedly withheld material exculpatory evidence as they were preparing for trial.

---

[27] *See also Koubriti v. Convertino*, 593 F.3d 459, 470 (6th Cir. 2010) ("[A]bsolute immunity protects a prosecutor from civil liability for the non-disclosure of material exculpatory evidence at trial."); *Porter v. White*, 483 F.3d 1294, 1305 n.8 (11th Cir. 2007) (§ 1983 action based on a prosecutor's failure to comply with *Brady* is barred because the prosecutor has absolute immunity); *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (prosecutor's failure to comply with *Brady* rule involves "an exercise of the prosecutorial function" providing the prosecutor with absolute immunity); *see also Brawer v. Horowitz*, 535 F.2d at 833 ("dismissing a complaint alleging that a federal prosecutor . . . conspired to use perjured testimony and to conceal exculpatory evidence in order to convict appellants" due to prosecutor's absolute immunity).

*See Brady*, 373 U.S. at 87.[28] Assuming—without deciding—that a viable *Brady* claim exists, it falls squarely within the scope of absolute immunity afforded to a prosecutor as discussed in *Imbler. See Imbler,* 424 U.S. at 431; *Yarris*, 465 F.3d at 137; *Koubriti v. Convertino*, 593 F.3d 459, 470 (6th Cir. 2010).

Plaintiff attempts to avoid absolute immunity by arguing that the alleged wrongdoing by the prosecutors is not "intimately associated with the judicial phase of the criminal process." (Dkt. No. 55 at 15). In so doing, however, he fails to allege any facts to support this assertion, which is inconsistent with the holding in *Imbler*.[29] Plaintiff also fails to cite a single case in which a prosecutor's alleged withholding of exculpatory evidence prior to trial was *not* found to be shielded by absolute immunity.

In further support of his claims, Plaintiff alleges that the prosecutor "denigrated this alibi evidence" at the hearing on his Motion to Reduce Bail. (Dkt. No. 1, at ¶ 60). However, it is the prosecutor's role as an advocate to challenge defense witnesses and evidence.[30] Again, the prosecutor's actions occurred as part of his advocacy duties and are subject to absolute immunity.

---

[28] In his Opposition, Plaintiff cites *Brady* for the proposition that the withholding of the cell phone records violated his constitutional rights. Plaintiff asserts that the *Brady* requirement that the prosecution "turn over evidence favorable to the accused and material to his guilt or punishment . . . was dishonored in this case," resulting in Plaintiff spending six months in prison. (Dkt. No. 55 at 14).

[29] Curiously, Plaintiff cites *Imbler* for the proposition that his claim that the individual VIDOJ Defendants withheld evidence "falls outside of the traditional advocacy functions." (Dkt. No. 55 at 15). As discussed above, however, in *Imbler*, the Supreme Court directly addressed an allegation of a prosecutor's *Brady* violation, and held that this conduct fell within the prosecutor's advocacy function and was subject to absolute immunity. *Imbler*, 424 U.S. at 431.

[30] The Superior Court Judge's Memorandum Opinion on the Motion for Bail detailed his reasons for concluding that the defense witnesses' testimony, statements, and affidavits were inconsistent or otherwise lacked credibility. The independent judgment of the Court undermines any basis to conclude that the prosecutor's challenge to the alibi evidence was somehow baseless or improper. (Dkt. No. 48-5 at 20-21).

Accordingly, the VIDOJ Defendants are shielded by absolute immunity from Plaintiff's *Brady* claims asserted against them. Accordingly, these claims will be dismissed with prejudice. *See Peeples v. Citta*, 501 F. App'x 109, 111 (3d Cir. 2012) (dismissal with prejudice is appropriate because there was no basis to conclude that any possible amendments could avoid defendant's absolute immunity.).

### 2. Malicious Prosecution

Plaintiff also asserts that the VIDOJ Defendants violated his constitutional rights by maliciously prosecuting him. (Dkt. No. 1 at 16). Plaintiff argues that the VIDOJ Defendants "were fully aware of the Plaintiff's alibi and the witnesses that had come forward with statements corroborating Plaintiff's alibi and Plaintiff's presence at Catalina Pool Services before, during and after the occurrence of the bank robbery. In spite of this knowledge, the Defendants proceeded with the prosecution and detention of the Plaintiff with a blatant and reckless disregard for the truth." (Dkt. No. 55 at 10).

In order to prove malicious prosecution under § 1983, a plaintiff must show, *inter alia*, that the criminal proceeding "was initiated without probable cause[.]" *Kossler*, 564 F.3d at 186; *see also Greene v. Virgin Islands Water & Power Auth.*, No. 1:2006-cv-0011, 2011 WL 3032466, at *12 (listing the elements for the tort of malicious prosecution). As discussed above, there was probable cause in this case for Plaintiff's arrest. *See Johnson*, 477 F.3d at 82 ("[t]o prevail on [a malicious prosecution] claim, [the plaintiff] must show that the officers lacked probable cause to arrest her."). Thus, Plaintiff's claim of malicious prosecution against the VIDOJ Defendants must fail.

Moreover, "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role. Thus, '[a] prosecutor is absolutely immune when making this decision, even where he acts

without a good faith belief that any wrongdoing has occurred.'" *Donahue v. Gavin*, 280 F.3d 371, 377 n.15 (3d Cir. 2002); *see also Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). Likewise, a prosecutor's weighing of the credibility of defense witnesses and theories in preparation for charges or hearings, is part and parcel of the prosecutorial function. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutor's absolute immunity extends to the professional evaluation of the evidence assembled by the police). Accordingly, independently of Plaintiff's ability to satisfy the elements of a malicious prosecution claim, the VIDOJ Defendants are absolutely immune from Plaintiff's claims that they maliciously initiated criminal proceedings against him.

In view of the foregoing, the Court finds that Plaintiff has failed to state a viable claim for malicious prosecution. In addition, the VIDOJ Defendants are entitled to absolute immunity for initiating and continuing the prosecution. Thus, the § 1983 malicious prosecution claims against the VIDOJ Defendants will be dismissed with prejudice.

### 3. Conspiracy to Intimidate Witnesses

As with the VIPD Defendants, Plaintiff has not alleged facts plausibly showing that the VIDOJ Defendants conspired in violation of § 1983 or §1985(2) to deter witnesses from testifying. *Great W. Mining & Mineral Co.*, 615 F.3d at 177-78. Plaintiff does not allege any facts stating a plausible claim that an agreement existed among the VIDOJ prosecutors, or between the VIDOJ prosecutors and the VIPD Defendants, the Marshals, or other unnamed law enforcement officers. Plaintiff also has failed to allege a factual basis that any such conspiracy

was grounded in invidious class-based discriminatory animus.[31] Absent facts that support a plausible claim of a conspiracy involving the individual VIDOJ Defendants, Plaintiff has failed to state a claim against these Defendants under § 1983 or § 1985(2). *Id.*

Although Plaintiff has failed to allege sufficient facts to support a claim of conspiracy by the VIDOJ Defendants to intimidate witnesses, the Court cannot determine, as a matter of law, that Plaintiff cannot state a viable claim. Accordingly, the Court will dismiss this claim without prejudice. *Iqbal*, 556 U.S. at 677. Plaintiff may replead this claim if there is a factual and legal basis to do so.

### 4.  Equal Protection Claims

To state a claim under the Equal Protection Clause, a § 1983 plaintiff "must allege that a state actor intentionally discriminated against him because of his membership in a protected class." *Lande,* 457 F. App'x at 192 (citing *Chambers,* 587 F.3d at 196). Plaintiff has not alleged he was treated differently than any similarly situated individuals or that he was discriminated against because he was a member of a protected class. Accordingly, Plaintiff's Equal Protection claims against the individual VIDOJ Defendants will be dismissed without prejudice, allowing Plaintiff to replead if he has a factual and legal basis to do so.

### E.  Leave to Amend

Plaintiff does not appear to have requested leave to amend his Complaint if the Court granted Defendants' Motion for Judgment on the Pleadings. However, "in civil rights cases[,] district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee*

---

[31] In addition, Plaintiff also would need to plead facts from which the Court could infer that any action by the individual VIDOJ Defendants were not "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430.

*Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (citing *Darr v. Wolfe*, 767 F.2d 79, 80–81 (3d Cir. 1985).

Because the VIPD, the VIDOJ, and the individual Defendants acting in their official capacities are not "persons" within the meaning of 42 U.S.C. §1983, any such claims against Defendants in their official capacities would be futile. Similarly, any Amended Complaint would be futile for the § 1983 claims for false arrest, omission of information from the Silva affidavit, insufficient post-arrest investigation, malicious prosecution, and withholding of exculpatory information that have been dismissed for failure to state a claim and/or on qualified immunity grounds. *See Brown v. Daniels*, 290 F. App'x 467, 474-75 (3d Cir. 2008) (affirming denial of motion to amend to add defendants who would have absolute immunity because such an amendment would be futile); *Nelson v. Herbert*, Civ. Nos. 12-2575; 12-1231, 2013 WL 163249, at *6 (D.N.J. Jan. 14, 2013) ("Since any amendment would be futile because [defendant] is entitled to absolute immunity, Plaintiff's claims based on [defendant's] allegedly perjurious testimony will be dismissed with prejudice."); *Felder v. Ebbert*, 2012 WL 5509750, at *3 (M.D. Pa. Nov. 14, 2012) (adopting recommendation of Magistrate Judge that found defendants entitled to qualified immunity and which thus rendered any amendment of the complaint futile). Accordingly, Plaintiff will not be permitted to include these claims in any Amended Complaint.

The Court has dismissed the Equal Protection and the § 1985(2) or § 1983 conspiracy to intimidate witness claims against the VIPD Defendants and the VIDOJ Defendants due to Plaintiff's failure to plead specific facts to plausibly state a claim. However, the Court cannot conclude as a matter of law that amendment of those claims would be futile. Accordingly, Plaintiff shall have sixty days from the date of this Memorandum Opinion within which to *file and properly serve* an Amended Complaint as to those specific claims.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has failed to properly serve all of the Defendants, except Defendant DeWood in his individual capacity. To the extent that Plaintiff's claims against Defendants are dismissed without prejudice, Plaintiff will be required to serve the associated Defendants promptly and properly with process.

The Court also finds that the Plaintiff has failed to state a claim under sections 1983 against the VIDOJ, VIPD, and the individual Defendants named in their official capacities. These claims will be dismissed with prejudice.

The Court further finds that the claims against the VIPD Defendants sued in their individual capacities are subject to dismissal—either because of Plaintiff's failure to plead sufficient facts to state a claim and/or Defendants' entitlement to qualified immunity. Thus, Plaintiff's § 1983 claims asserting false arrest, omission of information from the Silva Affidavit, insufficient post-arrest investigation, and malicious prosecution will be dismissed with prejudice.

The Court also finds that the VIDOJ Defendants sued in their individual capacities are entitled to absolute immunity on Plaintiff's withholding of exculpatory evidence and malicious prosecution claims. Accordingly, those claims will be dismissed with prejudice.

While Plaintiff has failed to state a claim against the individual VIPD Defendants and the individual VIDOJ Defendants—in their individual capacities—for Equal Protection violations and conspiracy to intimidate witnesses under § 1983 and § 1985(2), those claims will be dismissed without prejudice. Plaintiff will be permitted to amend his Complaint with respect to those claims if he has a factual and legal basis to do so.

Plaintiff shall have sixty days from the date of this Memorandum Opinion—up to and including March 14, 2022, within which to *file and properly serve* an Amended Complaint with

regard to those claims that are dismissed without prejudice if he has a factual and legal basis for such claims. If Plaintiff fails to timely file and properly serve his Amended Complaint, his remaining claims may be dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date: January 13, 2022                    _____/s/_____
                                          WILMA A. LEWIS
                                          District Judge